**BICON, INC. and DIRO, INC., Plaintiffs**

v.

**THE STRAUMANN COMPANY and INSTITUT STRAUMANN AG, Defendants**

**No. CIV.A.01 CV 10269–GA.**

United States District Court, D. Massachusetts.

Feb. 14, 2005.

Kevin C. Cain, Peabody & Arnold, Boston, MA, for Bicon, Inc., Diro, Inc., Counter Defendants.

Stephen J. Elliott, Kaye Scholer LLP, New York, NY, for Institut Straumann AG, The Straumann Company, Defendants.

Erick S. Hanson, Kaye Scholer LLP, New York City, for Institut Straumann AG, The Straumann Company, Defendants.

Jason C. Kravitz, Nixon Peabody, LLP, Boston, MA, for Institut Straumann AG, The Straumann Company, Counter Claimants.

Cornelius J. Moynihan, Jr., Nixon Peabody, LLP, Boston, MA, for Institut Straumann AG, The Straumann Company, Counter Claimants.

Milton S. Sherman, Kaye Scholer LLP, New York City, for Institut Straumann AG, The Straumann Company, Defendants.

Berj A. Terzian, Pennie & Edmonds, New York City, for Bicon, Inc., Diro, Inc., Counter Defendants.

## ORDER ON MOTION FOR ATTORNEYS' FEES

O'TOOLE, District Judge.

Having prevailed on their motion for summary judgment of non-infringement and their related opposition to the plaintiffs' cross-motion for summary judgment, the defendants now move for attorneys' fees pursuant to 35 U.S.C. § 285, asserting that this is an "exceptional case" justifying such an award.

There are two preliminary matters to be addressed. First, the defendants' motion to strike the declaration of Vincent J. Morgan (dkt. no. 108) is GRANTED for the reasons advanced in the motion, and the declaration is stricken. Second, the defendants' motion for leave to file a reply brief (dkt. no. 109) is GRANTED, and the brief submitted with the motion may be filed and docketed.

The defendants' motion for attorneys' fees (dkt. no. 105) is, however, DENIED.

In the post-*Markman* era, it is not an uncommon occurrence in patent litigation that the court's construction of the patent claims sets the stage for summary judgment motions on the issue of infringement. That was the course followed in this case. The court's scheduling orders, adopted pursuant to the parties' joint requests, provided a timetable for submission of summary judgment motions within a few months of the entry of the court's claim construction memorandum and order. The parties submitted their respective motions and oppositions pursuant to the schedule adopted, and in due course the motions were heard and decided in the defendants' favor. In following this course, this case was not "exceptional" in the ordinary, every-day meaning of the word. Rather, it was quite typical of the pattern of many cases.

The defendants, of course, contend that the case was "exceptional" as that word is understood as a term of art under § 285— that is, that the case was marked by "some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed.Cir.2005). Here, the defendants assert that it was "vexatious" and "unjustified" for the plaintiffs to continue the litigation after the claim construction pointed clearly to non-infringement.

It may first be observed that it does not appear that the defendants made any attempt as events unfolded to apprise the plaintiffs of their view that pressing on to the summary judgment stage would constitute sanctionable behavior. An analogous rule to § 285, Fed.R.Civ.P. 11, incorporates a procedure for notifying the potential transgressor of the objection to his pursuing a frivolous argument and giving him an opportunity to stand down. That is not required under the statute, so the failure to have done so is not automatically fatal to the defendants' motion for attorneys' fees, but it is nevertheless a circumstance that can be taken into account in determining what the plaintiffs should have known or done. Indeed, rather than protest the continuation of the case through the summary judgment stage, the defendants joined in several motions to set and amend the schedule for summary judgment briefing and argument. *See* Docket Nos. 64, 65, 67, and 97.

In light of the claim construction adopted by the court, the plaintiffs did recognize that they could not press forward with their claims of literal infringement and ceased to make that argument at this level. Instead, they pressed claims of

infringement by equivalents. It is another not uncommon occurrence in patent litigation that a patentee who sees his literal infringement case deteriorate as the case progresses will shift to a "fall-back" infringement by equivalents argument. The gist of the defendants' summary judgment motion was that the equivalents argument must fail as a matter of law in light of the construction given the claims. That is essentially the gist of virtually every summary judgment motion—that on the undisputed facts and existing state of the law the targeted claim or defense must necessarily fail. When the motion is granted, the court has effectively ruled that the claim or defense lacked merit, given the governing precedents. That does not mean, of course, that every losing summary judgment opponent can be blamed for a frivolous argument simply because it has been determined that the loser's argument lacked merit as a matter of law.

"A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed.Cir.1993). The defendants argue that the plaintiffs knew or should have known that it could not, under the precedents, establish that the accused products contained equivalents to certain key structures that were identified by the claim construction as elements of the claim at issue. There is no evidence as to what the plaintiffs actually "knew" so the focus is on what they "should have known."

They certainly should have known the state of the law regarding proof of infringement by equivalents. But whether under that law one feature of a device qualifies as, for example, "insubstantially different" from a claim element ordinarily calls for an evaluative judgment that depends heavily on the context of the particular controversy. So does the question whether a comparison of the features of one device with the claim elements results in a conclusion that an essential element is (or is not) effectively eliminated or vitiated. In applying the doctrine of equivalents, the degree to which separate functions, methods, or results may be the "same" is not a stark, black-and-white question; different observers may evaluate the degree of sameness differently. To be sure, the answer to be given to the equivalents question in litigation, whether by summary judgment or jury verdict, will be an objective one, by reference to a hypothetical skilled practitioner. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). But just as parties to a tort case might differently assess how a hypothetical "reasonable person" would or should resolve the question of negligence, parties in patent litigation can legitimately differ over what an objective skilled practitioner would regard as equivalent.

This is not to say that there will not be cases where the evaluative issue is so one-sided that, in addition to the appropriateness of bypassing the jury and entering judgment as a matter of law, it may also be said that the losing side's position was truly frivolous. However, there is not clear and convincing evidence that this is such a case. Accordingly, the defendants' motion for attorneys' fees under § 285 is denied.

It is SO ORDERED.